Maine Dairy, Inc. v. Commissioner.
Maine Dairy, Inc. v. Commissioner
Docket No. 11555.
United States Tax Court
1947 Tax Ct. Memo LEXIS 329; 6 T.C.M. (CCH) 49; T.C.M. (RIA) 47011; January 23, 1947
G. K. Richardson, Esq., for the petitioner, Leo C. Duersten, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined a deficiency in income tax in the amount of $431.95, for the fiscal year ended April 30, 1941. The only question is the amount which represents a reasonable allowance for compensation for personal services of two officers, husband and wife. Respondent disallowed $3,030.30, the total deducted for officers' salaries, $1,515.15 being the total salaries paid to each. The return was filed with the collector for the district of Maine. Findings of Fact Petitioner, a Maine corporation, has been in existence since 1921. It is engaged in the business of retail milk *330 distributor in Portland, Maine. In the taxable year, the outstanding stock consisted of 210 shares of common stock, of which 205 shares were in the name of Francis S. Cummings, and 5 shares were in the name of Walter S. Perkins. During the taxable year, and for 10 years prior, Walter S. Perkins was employed by petitioner full time as manager at a salary of $5,000 per annum. During the same periods, Francis S. Cummings was petitioner's president and treasurer, and his wife, Julia M. Cummings, was secretary and assistant treasurer. They resided in Belmont, a suburb of Boston. The net income of the petitioner, after deducting the amounts paid to Francis S. Cummings as president-treasurer, and the amounts paid to Julia M. Cummings as secretary and assistant treasurer during the fiscal years ended April 30 were as follows: Paid
Paid
FY Ended
Net
Francis S.
Julia M.
April 30
Income
Cummings
Cummings
1938
$ 642.71
1939
1,886.36
$1,800.00
$1,800.00
1940
1,059.68
1,010.10
1,010.10
1941
1,563.35
1,515.15
1,515.15
During the fiscal year ended April 30, 1941, Francis S. Cummings and Julia M. Cummings maintained and occupied, during the summer *331 months, a summer home at Camden, Maine. During the fiscal year ended April 30, 1941, the stockholders of the Maine Dairy, Inc. held only one stockholders' meeting. This was held on May 27, 1940 in Portland, Maine, and Francis S. Cummings and Julia M. Cummings were represented by proxies. The minute book of the Maine Dairy, Inc. contains a record of but one directors' meeting during the fiscal year ended April 30, 1941, and it shows that said meeting was held on May 28, 1940, at 53 Beatrice Circle, Belmont, Massachusetts. The gross sales and gross profit from sales for the fiscal year in question were, respectively, $178,173.02 and $15,809.96. Petitioner buys raw milk from producers and sells it to retailers. Its expenses in addition to Perkins' salary, but excluding salaries of the Cummings were $13,721.90. Petitioner employs about 30 employees at its plant. Walter S. Perkins became president of petitioner at some time during the 1942 fiscal year at Cummings' suggestion. Francis S. Cummings acquired the stock of petitioner in 1926. No part of the stock is owned by Julia M. Cummings. Since the date of its incorporation, petitioner has not paid dividends on its stock. *332 Minutes of directors meetings show that salaries of $4,200, each, were authorized for Francis and Julia Cummings for the years 1931, 1932, and 1933. In 1935, salary of $2,600 each was authorized by the directors. The corporate records do not show any adoption of resolutions fixing salaries after 1935 until June 13, 1943, when Perkins' salary was fixed at $5,000 and the salaries of Francis and Julia Cummings were fixed at $1,500 per year, and compensation actually paid to officers during past years were ratified and approved. For the calendar year 1941, the gross income of Francis S. Cummings, consisting principally of dividend and fiduciary income, amounted to $13,076.48. In his 1941 individual Federal income tax return, Francis S. Cummings reported compensation for personal services in the amount of $1,715.15, of which $1,515.15 was received from the Maine Dairy, Inc., and $200 thereof was a bank director's fee. In the latter part of April of the fiscal year ended April 30, 1941, Francis S. Cummings received the amount of $1,515.15 from the Maine Dairy, Inc. Payment was made by a single check. Francis Cummings has been in the milk business all of his adult life, since 1905. *333 He has served as executive of various companies, and has drawn salaries from them. In 1929 he was treasurer of Francis S. Cummings Company, which had a three million dollar a year business; and he was a one-third owner of Bushway Ice Cream Company which had gross sales of one million dollars. He organized the Francis S. Cummings Company business and operated it in partnership before 1920. During 1920, he consolidated his business with another concern and became treasurer. His experience has consisted of operating businesses and of purchasing small businesses for merger with the above named companies. In 1940 and 1941, petitioner was the only milk business in which Cummings was interested. During the taxable period, Francis Cummings directed the business of petitioner; he took the chief responsibility for the business; he inspected machinery and all equipment; he went over the sales policies of petitioner; he went over the books; he attended many conferences at the plant; he was in continuous contact with Perkins, whom he had trained in the business. The year May 1940 to May 1941 was a very hard year for the business of petitioner. Cummings' decisions and efforts were important in *334 keeping the business going during this period. He studied the farmers' accounts, the milk supply, and the surplus or shortage in the market during the year.' He decided whether or not new machinery and new trucks should be purchased. He decided upon the amounts of expenditures to be made. During the year problems arose about prices; there were problems of price cutting; some trade was lost. Cummings devoted his efforts to dealing with problems of milk prices and of retaining or letting go the petitioner's trade under various circumstances. There was no change in the services of Cummings to petitioner in 1940 and 1941 compared to preceding years. The chief responsibility for operating the business of petitioner was upon Cummings during the taxable period. Perkins was not given authority to decide many matters and particularly those relating to borrowing money or making the larger expenditures. Julia M. Cummings, born in 1881, was 60 years old in 1941. She has been the wife of Francis Cummings for 41 years. She is the mother of three children. During the period May 1, 1940 to April 30, 1941, the fiscal year of petitioner, Mrs. Cummings devoted most of her time to her home. The Cummings *335 have a farm in Maine. They were there from about June to September in 1940. Mrs. Cummings visited petitioner's plant during this period with her husband when he made visits to petitioner's plant. Mrs. Cummings has assisted her husband in his dairy businesses during their married life, and she has knowledge of the milk business. The period of her active participation in businesses of her husband was before 1940. During the period May 1, 1940 to April 30, 1941, Mrs. Cummings attended a few meetings with her husband where the business of petitioner was discussed; she took telephone messages relating to the business for her husband; and she talked over general matters pertaining to petitioner's business with her husband. Francis Cummings determined what compensation petitioner should pay to his wife, and he decided that she should be paid an amount equal to his own compensation from petitioner. Cummings considered that he should have received more than $1,500 per year for his services, but he wanted his wife to receive "her share." A reasonable allowance for compensation for the services actually rendered to petitioner by Francis Cummings during the fiscal year ended April 30, 1941 is *336 $1,515.15; and that amount was not excessive compensation for the personal services which he rendered to petitioner. Opinion The question arises under section 23 (a) (1) of the Internal Revenue Code, and is what amounts constitute a reasonable allowance for compensation for personal services actually rendered to petitioner by its two officers, Francis and Julia Cummings. The question is one of fact. The petitioner has the burden of overcoming the prima facie correctness of respondent's determination, and of proving what constitutes reasonable allowances for compensation for purposes of business expense deductions. Francis Cummings: The evidence supports the contention of petitioner that Francis Cummings rendered valuable services in the management of its business and that he was entitled to receive compensation for the personal services which he actually rendered. Respondent stresses the fact that Cummings owned almost all of petitioner's stock. He points out that during the fiscal years 1938 to 1941, inclusive, Francis and Julia Cummings were paid equal amounts by petitioner and that no dividends were paid. He argues that the efforts of Francis Cummings *337 were no more than a "cursory interest" of the principal stockholder in the petitioner's affairs. We do not agree with the latter contention of the respondent. The evidence establishes that Francis Cummings rendered personal services to petitioner throughout the taxable period which were more than merely a "cursory interest." He had not retired from his function of chief manager of petitioner during the fiscal year in question and he had not turned over to Perkins the office of president. He continued to be the chief executive and manager of the business, and the services he rendered to petitioner were valuable and essential. We do observe the peculiar fact that equal amounts were paid to Cummings and his wife, and that such equality in the amounts of payments to both had continued over several years. This fact requires close examination of the facts. The reason for the equality of payments in prior years is not part of the record, and we think it is not material to the decision of the question which relates only to the 1941 fiscal year. The record shows that Julia Cummings rendered very slight services to petitioner, if any real services, during the taxable period, and that she *338 was not entitled to receive a salary of $1,500 a year. On the other hand, Francis Cummings was entitled to receive compensation; he rendered actual and valuable services to petitioner. He testified that he considered $1,500 per year too low and inadequate payment for his services, but that he wanted his wife to have "her share." Julia Cummings was not a stock holder. Hence, payment of a salary to her could not be a distribution of dividends to her in the guise of salary payments. But Francis Cummings owned all the stock except five shares. Payments to his wife of a salary could represent distribution to her of her husband's earnings or of his dividends on his stock in the guise of salary. Accordingly, it is part of petitioner's burden of proof to show that Cummings, who was in control of petitioner, did not reallocate within his family group, by these payments to his wife, salary or other income which belonged to him in reality This, petitioner has not done, with respect to the $1,515.15 paid to Julia Cummings. Julia Cummings: The wife of Francis Cummings had given services in earlier years in his businesses, and it appears that she was capable of rendering real services. But the *339 evidence does not show that she rendered any services of any importance to petitioner in the 1941 fiscal year. She attended some meetings and took some 'phone calls. Otherwise she did nothing which deserves to be classed as "personal services actually rendered" for purposes of a business expense deduction under section 23 (a) (1). Such small services as she rendered to petitioner, in conjunction with her husband, were not worth $1,515.15 for the year, and if they were worth less than that amount, the record does not enable us to find as a fact that a reasonable allowance for compensation was some lesser amount. It is held that respondent properly disallowed petitioner deduction for the $1,515.15 which was paid to Mrs. Cummings. Petitioner makes no claim for deduction of any amount larger than $1,515.15 as a reasonable allowance for compensation for the services actually rendered by Francis Cummings. It has been found as a fact, therefore, that such amount was a reasonable allowance for his compensation. Upon the record, we think $1,515.15 was not excessive compensation for his services. Since respondent's determination is sustained in part, only, recomputation of the deficiency *340 must be made. Decision will be entered under Rule 50.